UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RITA L. HEMPHILL,

       Plaintiff,

v.

                                        CIVIL NO.  SA-05-CA-430-PM

THE CENTER FOR HEALTH CARE
SERVICES,
       Defendant.

## MEMORANDUM DECISION AND ORDER

Pursuant to the consent of the parties to disposition before a United States Magistrate Judge[1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(c) and rule 1(I) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following memorandum decision and order is entered.

## I.  JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

## II.  PROCEDURAL HISTORY

Plaintiff Rita Hemphill initiated this proceeding on or about March 22, 2005, by filing her original petition and jury demand in the 45th Judicial District Court, Bexar County, Texas, in Cause Number 2005-CI-04517, against defendant The Center for Health Care Services (the "Center").[2]  Plaintiff alleges she was reprimanded, placed on discretionary leave of absence,

---

[1]  Docket nos. 3, 4, and 5.

[2]  Docket no. 1, attachment "Plaintiff's Original Petition."

suspended, and terminated in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., ("Title VII"), 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981" or "§ 1981"), and the Texas Labor Code, § 21.001, et seq., as amended, because of her race and color, Black American.[3]  Plaintiff also alleges the Center retaliated against her for filing a complaint with the Equal Employment Opportunity Commission ("EEOC").[4]  Plaintiff seeks: reinstatement at the position and pay grade she would have held but for the termination; damages; lost wages, past, present, and future; lost benefits including health insurance, vacation, and sick leave; "back pay from the date Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;" front pay; lost future earning capacity; damages for emotional pain, inconvenience, past and future mental anguish; reasonable attorney's fees; "reasonable and necessary costs;" expert fees; and pre and post judgment interest.[5]

The Center filed its answer on April 29, 2005,[6] and on May 11, 2005, removed the case to federal court on the basis of federal question jurisdiction.[7]  On June 21, 2005, the case was reassigned from the District Court to the undersigned pursuant to parties' consent to proceed

---

[3]  Id. at 3-5.

[4]  Id. at 5-6.

[5]  Id. at 6-7.

[6]  Docket no. 1, attachment "Defendant, The Center for Health Care Services, Original Answer."

[7]  Docket no. 1.

before a United States Magistrate Judge.[8]  On May 30, 2006, the Center filed its motion for summary judgment.[9]  Plaintiff filed a timely response on June 5, 2006.[10]

### III.  STATEMENT OF FACTS

Unless otherwise noted, the parties do not appear to contest the following facts which are construed in favor of plaintiff as the non-movant.  The facts are derived from plaintiff's original petition and the "Factual Background" included in the Center's motion for summary judgment, which plaintiff has not disputed, and exhibits attached to the motion.

Plaintiff, a Black American female,[11] was first employed by the Center in July 1997, as an ADP Equipment Operator I.[12]  This position required plaintiff to perform various functions, including data input, records verification, filing, and copying.[13]  Plaintiff maintained this position until January 27, 2003, when she was transferred at her request to Medical Records.[14]  During her initial employment orientation, plaintiff received the Center's "'Employee Handbook,' which

---

[8]  Docket nos. 3, 4, and 5.

[9]  Docket no. 11.

[10]  Docket no. 12.  At the time of tendering this Memorandum Decision and Order to the Clerk's Office for filing, the time for defendant to file a reply on its motion has not yet expired.  The filing of a reply is discretionary and pursuant to Local Civil Rule CV-7(e), the Court is not required to delay a decision until the reply deadline has expired.  Also, here, the reply would advance arguments in favor of the prevailing party such that there seems no harm by entering a decision after the response.

[11]  Plaintiff's original petition at 3.

[12]  Docket no. 11 at 2; exhibit B-1 ("Position Description").

[13]  Id.

[14]  Id. at 2; exhibit A at 72 (excerpts from plaintiff's Apr. 27, 2006 deposition).

3

explains polices regarding absenteeism, tardiness, patient records, and discipline."[15]

Plaintiff's assignment to Medical Records in January 2003 required her to update and maintain patient medical charts and records as well as to perform data entry as she had in her previous position.[16]  In April 2003, the Center provided training regarding absence policies.[17] This training supplemented information provided in the "Attendance Management" section of the employee handbook and the "Desk Top Procedures" issued to employees, which instructed employees to call a supervisor in the event of an absence.[18]  On or about May 31, 2003, plaintiff was absent from work on two days but did not notify her supervisor, Sandra Pesina.[19]  On June 4, 2003, Ms. Pesina issued a level two reprimand for the no-call absences.[20]  The written reprimand reflects plaintiff was "again given supervisors['] cell phone numbers."[21]  Plaintiff was reminded about the absence procedures.[22]  Plaintiff's pay was not docked as a result of the reprimand.[23] Beginning in the summer of 2003, Dianne McDonald was plaintiff's supervisor in Medical

---

[15]  Id. at 2; exhibits B-2 ("New Employee Orientation Checklist") and B-4 (pages from the Center's employee handbook).

[16]  Id. at 2; exhibit A at 73.

[17]  Id. at 2; exhibit A at 78.

[18]  Id. at 2; exhibit A at 45, 51; exhibit B-3 ("Desk Top Procedures").

[19]  Id. at 3; exhibit A at 76, 78; exhibit B-7 (June 4, 2003 "Disciplinary Notice").

[20]  Id. at 3; exhibit B-7.

[21]  Docket no 11, exhibit B-7.

[22]  Docket no. 11 at 3; exhibit A at 86; exhibit B-7.

[23]  Id. at 3; exhibit A at 86.

Records.[24] Ms. McDonald verbally reprimanded plaintiff for being late on several occasions and for difficulties with work organization.[25]

Toward the end of 2003, Linda Hodgson became plaintiff's supervisor in Medical Records.[26] Training sessions were scheduled on December 30, 2003 and January 6, 2004, to help employees, including plaintiff, with workflow issues.[27] On January 7, 2004, a file was misplaced.[28] The file was plaintiff's responsibility, but the staff of Medical Records, including plaintiff and Ms. Hodgson, expended considerable time locating the file.[29] Eventually, the file was found on plaintiff's desk.[30] Plaintiff was given a written warning as a result of the incident.[31] Shortly after this incident, plaintiff was absent without giving proper notice to Ms. Hodgson.[32] Plaintiff was given a disciplinary notice and placed on a level four, decision making leave for continued attendance management problems.[33] A decision making leave of absence consists of

---

[24] Id. at 3; exhibit B-8 (Mar. 23, 2004 letter from Diane McDonald, LPC, Crisis Services Program Administrator).

[25] Id.

[26] Docket no. 11 at 3; exhibit A at 91.

[27] Id. at 3; exhibit A at 89.

[28] Id. at 3; exhibit A at 92; exhibit B-9 (Jan. 7, 2004 written warning of current work).

[29] Id.

[30] Id.

[31] Docket no. 11, exhibit B-9.

[32] Docket no. 11 at 3; exhibit B-10 (Jan. 13, 2004 "Disciplinary Notice" and Jan. 13, 2004 memorandum regarding decision making leave).

[33] Id. at 3; exhibit A at 121; exhibit B-10.

one day off with pay and is intended to allow the employee time to reflect on whether to continue employment with the Center.[34]  Upon her return from leave, plaintiff attended a skills training program.[35]

On February 27, 2004, it was discovered that "white out" was used on a patient medical chart and covered part of the treating physician's notes.[36]  Plaintiff admitted she had used "white out" and remarked a code.[37]  The code marked by plaintiff was different than the one reflected in the treating physician's notes.[38]  Due to the nature of the incident, plaintiff was placed on decision making leave with pay effective February 27, 2004.[39]  Although plaintiff could have been terminated from employment for this incident pursuant to the Center's policies,[40] she returned to work on March 5, 2005,[41] but she was transferred to a position in a different unit.[42] Plaintiff was transferred two additional times before her termination.[43]  On April 4, 2004, plaintiff was given a

---

[34] Id.

[35] Id. at 3; exhibit A at 106; exhibit B-11 (Jan. 14, 2004 "Medical Records Training").

[36] Id. at 3; exhibit B-12 (Feb. 27, 2004 letter from Cynthia Cannon, RHIA).

[37] Id. at 3; exhibit A at 125-26, 128-29; exhibit B-12.

[38] Id.

[39] Id. at 3; exhibit A at 141

[40] Id. at 3; exhibit B-4.

[41] Id. at 3; exhibit A at 141.

[42] Id.

[43] Id. at 3; exhibit 15 (various memoranda regarding plaintiff)

level one, verbal reminder, for work performance deficiencies.[44]  Plaintiff was terminated on April 12, 2004.[45]

Plaintiff filed her charge of discrimination with the EEOC on February 27, 2004, alleging race discrimination.[46]  On April 19, 2004, plaintiff amended her EEOC complaint to include an allegation of retaliation.[47]  Plaintiff received her notice of right to sue from the EEOC on or about December 27, 2004.[48]

## IV.  ISSUES

1.      Whether the Center is entitled to summary judgment on plaintiff's discrimination claims.

2.      Whether the Center is entitled to summary judgment on plaintiff's retaliation claims.

## V.  SUMMARY JUDGMENT STANDARD

The standard to be applied in deciding a motion for summary judgment is set forth in Federal Rule of Civil Procedure 56, which provides in pertinent part as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[44]  Id. at 3; exhibit B-14 (Apr. 2, 2004 "Disciplinary Notice").

[45]  Id. at 3; exhibits B-16 ( Apr. 21, 2004 memorandum from Mary Ann Mabe) and B-17 (Apr. 19, 2001 memorandum from Cynthia Cannon); plaintiff's original petition at 4.

[46]  Id. at 3;exhibit B-13 (EEOC complaint).

[47]  Docket no. 12, exhibit D at Apr. 19, 2004 first amendment.

[48]  Plaintiff's original petition, attachment.  The date of the notice is not clear but it appears to be Dec. 27, 2004..

moving party is entitled to judgment as a matter of law.[49]
Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.[50] A fact is material if it might affect the outcome of the lawsuit under the governing law.[51]  A dispute about a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party.[52]  Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[53]

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[54]  The burden then shifts to the party opposing the motion to present affirmative evidence in order to defeat a properly supported motion for summary judgment.[55]  All evidence and inferences drawn from that evidence must be

---

[49] FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

[50] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).

[51] Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir. 1994).

[52] Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Wise v. E.I. DuPont De Nemours & Co., 58 F.3d 193, 195 (5th Cir. 1995).

[53] Anderson, 477 U.S. at 249, 106 S.Ct. at 2510-11.

[54] Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553.

[55] Anderson, 477 U.S. at 257, 106 S.Ct. at 2514.

viewed in the light favorable to the party resisting the motion for summary judgment.[56]  Thus,

summary judgment motions permit the Court to resolve lawsuits without the necessity of trials if

there is no genuine dispute as to any material facts and the moving party is entitled to judgment as

a matter of law.[57]

The movant may satisfy the burden to show the "absence of a genuine issue of material

fact by pointing out that the record contains no support for the non-moving party's claim."[58]  If

non-movant cannot provide some evidence to support its claim, summary judgment is

appropriate.[59]

## VI.  ARGUMENTS AND CONCLUSIONS OF LAW

### A.  Summary of the Arguments

The Center has moved for summary judgment, arguing plaintiff "cannot establish a

genuine issue of material fact as to . . . a prima facie case of racial discrimination."[60]  The Center

concedes plaintiff is a member of a protected class but argues, in sum, that plaintiff cannot show

she was qualified for her position, suffered an adverse employment action, or was treated

differently than a similarly situated person outside the protected class.[61]  With respect to the

---

[56]  Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 97 (5th Cir. 1993).

[57]  See Fields v. City of South Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991).

[58]  Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 263 (5th Cir.), cert. denied, 537 U.S. 824 (2002).

[59]  Stahl, 283 F.3d at 263.

[60]  Docket no. 11 at 8.

[61]  Id. at 9-14.

retaliation claim, the Center concedes plaintiff engaged in a protected act but argues plaintiff cannot establish a prima facie case because she is unable to show an adverse employment act or a causal connection between the adverse act and the protected activity.[62]  In the event plaintiff is able to establish a prima facie case of retaliation, the Center argues plaintiff cannot show that but for filing the EEOC complaint she would not have been terminated, as is required to raise a fact issue about pretext.[63]  In support of the motion for summary judgment, the Center has proffered excerpts from plaintiff's April 27, 2006 deposition testimony and the affidavit of Ramona Flores, the Center's Director of Human Resources, with attached exhibits.[64]

In response, plaintiff argues summary judgment should be denied because she has direct evidence of discrimination and is not required to satisfy the elements of a prima facie case.[65]  Alternatively, plaintiff cites evidence to show she was qualified for her position, wrongfully terminated, and was treated differently than Anita Sanchez, a Hispanic.[66]  To support her response, plaintiff has proffered excerpts from her April 27, 2006 deposition testimony, copies of documents produced by the Center, her EEOC affidavits, and her sworn statement of material facts.[67]

---

[62]  Id. at 15-17.

[63]  Id. at 17-18.

[64]  Id., exhibits A, B, and B-1 to B-18.

[65]  Docket no. 12 at 3.

[66]  Id. at 4-7.

[67]  Id., exhibits A-E.  As discussed further below, plaintiff has not expressly responded to defendant's arguments that summary judgment is appropriate on plaintiff's retaliation claim.

**B.     Discrimination**

**1.     Direct Evidence**

A plaintiff may establish employment discrimination by direct or circumstantial evidence.[68]

"Direct evidence is evidence which, if believed, proves the fact without inference or

presumption."[69]  "The evidence need not show that race was the sole basis in order to constitute

direct evidence."[70]  Mere contentions that race was a factor in the plaintiff's treatment are not

direct evidence of discrimination.[71]

Plaintiff argues she has direct evidence of discrimination.  In particular, plaintiff asserts the

following provide direct evidence of discrimination:

> [1] That she was reprimanded many times by her Hispanic Supervisor Linda
> Hodgson, one of those times when Anita Sanchez, also Hispanic, was the guilty
> party who lost a chart for which Sanchez was responsible.  Yet, Plaintiff received
> a "write[-]up" because in some mysterious way the chart was found on her desk.
> Anita Sanchez was excused without a "write-up" by Hodgson.
>
> [2] Another instance show[n] in her evidence: When Hodgson . . . was absent
> when Plaintiff telephoned as required to report her illness, and she logically asked
> the receptionist to report her having called to Hodgson, nevertheless, she received
> another "write-up."
>
> [3] Anita Sanchez never received a reprimand or a "write-up" from Hodgson
> during the entire time under her supervision.  Plaintiff's evidence shows several
> instances of Sanchez's disregard of training rules without receiving even one

---

[68] Jones v. Robinson Property Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005); Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 896 (5th Cir. 2002), cert. denied, 539 U.S. 926, 123 S.Ct. 2572 (2003).

[69] Jones, 427 F.3d at 992.

[70] Id. at 993.

[71] See id.

reprimand from Linda Hodgson.[72]

Even when viewed in a light favorable to plaintiff, as nonmovant, the three assertions of direct

evidence are no more than plaintiff's mere contentions that race was a factor in her treatment.  To

find race discrimination based on plaintiff's assertions, the fact finder would have to rely on

inferences or presumptions rather than incontrovertible evidence of discrimination.  Plaintiff cites

no specific statements, documents, or other evidence that clearly and explicitly show plaintiff's

race was a motivating factor in her treatment.[73]  As plaintiff has not cited direct evidence of race

discrimination, she must establish her case with circumstantial evidence.

### 2.     Analytical Framework for Evaluating Discrimination Claims

Title VII prohibits any employment practice that "discriminates against any individual with

respect to her compensation, terms, conditions, or privileges of employment because of such

individual's" sex, race, or national origin.[74]  Section 1981 prohibits discrimination based on race

or national origin.[75]  The inquiry into discrimination for a cause of action brought under Title VII

and § 1981 is essentially the same.[76]  In addition, the Fifth Circuit has held that discrimination

claims under Title VII and the Texas Labor Code "are all evaluated within the same analytical

---

[72]  Docket no. 12 at 3-4.

[73]  See id.

[74]  42 U.S.C. § 2000e-2(a)(1).

[75]  42 U.S.C. § 1981(a).

[76]  Jones, 427 F.3d at 992.

framework."[77]  Accordingly, any analysis relevant to the Title VII claims will apply equally to plaintiff's § 1981 and Texas Labor Code claims.

If the plaintiff produces only circumstantial evidence, the Court must analyze the discrimination claims under the well-established burden-shifting framework set forth in McDonnell Douglas Corporation v. Green.[78]  Under the McDonnell Douglas framework, a plaintiff must first carry the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination.[79]  In McDonnell Douglas, the Supreme Court required that a

> complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination.  This may be done by showing (I) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.[80]

The Supreme Court noted, however, that this framework is intended to be flexible and, therefore, the requirements for a prima facie case will vary with the facts of each case.[81]  But, at the least, a

---

[77]  See Evans v. City of Houston, 246 F.3d 344, 349 (5th Cir. 2001) ("Claims of racial discrimination under Title VII . . . and . . . discrimination under the [Texas Labor Code] are all evaluated within the same analytical framework.").

[78]  411 U.S. 792, 802, 93 S.Ct.1817, 1864 (1973); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 2106 (2000) ("McDonnell Douglas and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases'") (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742 (1993)).

[79]  Patterson v. McLean Credit Union, 491 U.S. 164, 186-87, 109 S.Ct. 2363, 2378 (1981); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94 (1981).

[80]  411 U. S. at 802, 93 S.Ct. at 1824.

[81]  McDonnell Douglas, 411 U.S. at 803 n.13, 93 S.Ct. at 1824 n.13 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from

prima facie case in an employment discrimination cause of action requires proof of some type of

ultimate employment decision adverse to the plaintiff.[82]

If the plaintiff establishes a prima facie case, a rebuttable presumption arises that the

employer unlawfully discriminated against plaintiff.[83]  The burden then shifts to the defendant to

present evidence that it treated plaintiff in a certain way for a legitimate, nondiscriminatory

reason.[84]  Once the defendant satisfies this second part of the analysis, the presumption raised by

---

respondent is not necessarily applicable in every respect to differing factual situations.").

[82]  "Ultimate employment decisions" include acts such as refusals to hire, refusals to grant leave, demotions, discharges, refusals to promote and reprimands.  Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995) (discrimination based on gender, race, and retaliation); Mattern v. Eastman Kodak Co., 104 F.3d 702 (5th Cir. 1997), cert. denied, 522 U. S. 932, 118 S.Ct. 336 (1997) (retaliation); Fortier v. Ameritech Mobile Communications, Inc., 161 F.3d 1106, 1112 n. 7 (7th Cir. 1998) ("'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" . . . "'Not everything that makes an employee unhappy is an actionable adverse action.'") (citations omitted); Page v. Bolger, 645 F.2d 227, 233 (4th Cir.) (en banc) (noting that Title VII discrimination cases have focused upon ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating), cert. denied, 454 U.S. 892, 102 S.Ct. 388 (1981).

[83]  Patterson, 491 U.S. at 187, 109 S.Ct. at 2378; Burdine, 450 U.S. at 253, 101 S.Ct. at 1093.

[84]  St. Mary's Honor Center, 509 U.S. at 507, 113 S.Ct. at 2747.  See also Burdine, 450 U.S. at 255-56, 101 S.Ct. at 1094-95 ("To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.  The explanation provided must be legally sufficient to justify a judgment for the defendant.  If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.  Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.  At this second stage, defendant is not required to prove the legitimate, nondiscriminatory reason.") (citations and notes omitted); Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir. 1993) ("This misstatement [by a defense witness], Bodenheimer argues, renders the evidence unreliable, thereby creating a genuine factual issue. Bodenheimer's reasoning is unpersuasive.  The degree of impeachability of evidence at this stage is irrelevant.  St.

the prima facie case is rebutted and is dropped from the case.[85]  The third step of the analysis

shifts the burden back to plaintiff to prove that the reason articulated by the employer was a mere

pretext for discrimination.[86]  For purposes of proving pretext, it is not enough to show that the

stated reason was false; plaintiff must show both that the stated reason was false and that

discrimination was the actual reason for the adverse employment action.[87]  "[T]he trier of fact may

still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly

drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"[88]

At the third step, plaintiff need not produce additional independent evidence of

discrimination.[89]  Although "a prima facie case and sufficient evidence to reject the employer's

---

Mary's directs us to avoid making any credibility determinations at this stage because 'the
burden-of-production determination necessarily precedes the credibility- assessment stage.'  St.
Mary's, 509 U.S. at ----, 113 S.Ct. at 2748 (emphasis original). The employer need only articulate
a lawful reason, regardless of what its persuasiveness may or may not be.") (notes omitted).

[85]  St. Mary's Honor Center, 509 U.S. at 507, 516-17, 113 S.Ct. at 2747, 2752-53.

[86]  Id.; Burdine, 450 U.S. at 256, 101 S.Ct. at 1095.

[87]  St. Mary's Honor Center, 509 U.S. at 516-17, 113 S.Ct. at 2752-53.

[88]  Reeves, 530 U.S. at 142-44, 120 S.Ct. at 2106 (quoting Burdine, 450 U.S. at 255 & n. 10,
101 S.Ct. at 1089 & n. 10).  In Reeves, the Supreme Court held that "a plaintiff's prima facie case,
combined with sufficient evidence to find that the employer's asserted justification is false, may permit
the trier of fact to conclude that the employer unlawfully discriminated."  530 U.S. at 148-49, 120
S.Ct. at 2109.  The Court stated that, more likely than not, a showing of pretext will lead to an
inference of discrimination: "Moreover, once the employer's justification has been eliminated,
discrimination may well be the most likely alternative explanation, especially since the employer is in
the best position to put forth the actual reason for its decision."  530 U.S. at 148-49, 120 S.Ct. at
2108-09.

[89]  See Blow v. City of San Antonio, 236 F.3d 293, 298 (5th Cir. 2001) (reiterating that no
"additional, independent evidence of discrimination" is required); Ratliff v. City of Gainesville, 256
F.3d 355, 361-62 (5th Cir. 2001) (same).

explanation may permit a trier of fact to determine that the employer unlawfully discriminated and may therefore prevent summary judgment in favor of the employer," this showing is not always enough to prevent summary judgment if "no rational factfinder could conclude the action was discriminatory."[90]

> For instance, an employer would be entitled to summary judgment "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred." . . . [Reeves, 530 U.S. at 148, 120 S.Ct. at 2109] . . .Whether summary judgment is appropriate in any particular case depends on a variety of factors, including "the strength of the prima facie case, the probative value of the proof that the employer's explanation is false and any other evidence that supports the employer's case and that properly may be considered." Id. We have said that summary judgment is inappropriate "if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race] was a determinative factor in the actions of which plaintiff complains." Vadie v. Mississippi State University, 218 F.3d 365, 373 (5th Cir.2000), cert. denied, 531 U.S. 1150, 121 S.Ct. 1092, 148 L.Ed.2d 966 (2001).[91]

Because plaintiff ultimately retains the burden of persuading the fact-finder of intentional discrimination,[92] the question on summary judgment at the pretext stage is whether there is a conflict in substantial evidence to create a jury question regarding discrimination.

### 3.   Analysis

Plaintiff claims she was subject to discrimination because of her race and color.  To establish a prima facie case of discrimination, plaintiff must demonstrate that: (1) she is a member

---

[90] Reeves, 530 U.S. at 148, 120 S.Ct. at 2109; Pratt v. City of Houston, Tex., 247 F.3d 601, 606 (5th Cir. 2001).  Although Reeves was based on a motion for judgment as a matter of law, the standard is the same for summary judgment.  Pratt, 247 F.3d at 607 n. 3.

[91] Pratt, 247 F.3d at 606 (note omitted); see also Grimes v. Texas Dept. of Mental Health & Mental Retardation, 102 F.3d 137, 140-41 (5th Cir. 1996); Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 994 (5th Cir. 1996) (en banc).

[92] Reeves, 530 U.S. at 148-49, 120 S.Ct. at 2109.

of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) others similarly situated were treated more favorably.[93]

The Center concedes plaintiff is a member of a protected class but argues she cannot establish the remaining elements of her <u>prima facie</u> case of discrimination.  With respect to whether plaintiff was qualified for her position, the record reflects plaintiff was employed by the Center for approximately seven years prior to her termination.  In addition, plaintiff has presented evidence of evaluations showing she met standards in at least 2002 and 2003.[94]  Collectively, this evidence suggests plaintiff was qualified for her position and is sufficient to establish the second element of her <u>prima facie</u> case.

With respect to whether plaintiff suffered an adverse employment action, the Fifth Circuit has explained that "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions."[95]  The Court held that such decisions as "hiring, granting leave, discharging, promoting, and compensating" satisfy the adverse employment action requirement.[96]  In addition, a demotion, failure to promote, reassignment with a significant change in benefits, each of which constitutes a significant change in employment status, satisfy the standard.[97]  But, verbal threats of being fired, reprimands, a missed pay increase, and being placed on a final

---

[93]   <u>See</u> <u>Rutherford v. Harris County</u>, 197 F.3d 173, 184 (5th Cir. 1999).

[94]   Docket no. 12, exhibit C at CHCS 0385-0395, 0422.

[95]   <u>Dollis</u>, 77 F.3d at 781-82.

[96]   <u>Id</u>.

[97]   <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 759-63, 118 S.Ct. 2257, 2268-69 (1998).

warning do <u>not</u> constitute adverse employment actions.[98]  "[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same."[99]

Plaintiff contends she suffered the adverse employment actions of being: reprimanded numerous times;[100] needlessly transferred at least three times; placed on decision making leave of absence; and terminated.[101]  Although these acts may have been unpleasant and frustrating, plaintiff cites no evidence showing she lost pay, benefits, or her level of responsibility because she was reprimanded, transferred, or placed on leave.  Accordingly, she has failed to show these acts individually were adverse for the purposes of a discrimination claim.  Nevertheless, there is no dispute that plaintiff was terminated from her employment with the Center on April 12, 2004.  Pursuant to the above standards, the termination is sufficient to establish the third element of her <u>prima facie</u> case.

With respect to the fourth element of her <u>prima facie</u> case of race discrimination, plaintiff must show that "similarly situated" employees outside the protected class were treated differently by demonstrating the disparate treatment occurred in "nearly identical" circumstances.[102]  In the present case, plaintiff argues she was similarly situated to Anita Sanchez who was "habitually"

---

[98]  <u>Mattern</u>, 104 F.3d at 708.

[99]  <u>Watts v. Kroger</u>, 170 F.3d 505, 510 (5th Cir. 2001).

[100]  Docket no. 12 at 3-4.

[101]  <u>Id.</u> at 5.

[102]  <u>Mayberry v. Vought Aircraft</u>, 55 F.3d 1086, 1090 (5th Cir. 1995) (citations omitted); <u>see also</u> <u>Sandstad</u>, 309 F.3d at 901 ("In discrimination cases, we compare the treatment of other employees whose conduct is 'nearly identical' to the plaintiff's conduct and who were treated more favorably than the plaintiff.").

treated more favorably by Ms. Hodgson.[103]  Plaintiff argues, in sum, that despite violating training rules, Ms. Sanchez never received a reprimand or "write-up during the time she was supervised by Ms. Hodgson.[104]  In particular, plaintiff contends she was reprimanded by Ms. Hodgson after a misplaced folder was discovered on her desk, but Ms. Sanchez, who was responsible for the folder, was not similarly reprimanded.[105]  Plaintiff cites evidence suggesting Ms. Sanchez spent much time away from her work, was frequently late for work, and had discrepancies in her work.[106]  Plaintiff asserts Ms. Sanchez was not reprimanded or terminated for this conduct.

Assuming plaintiff's evidence supports her contentions and assertions, plaintiff has not established she was similarly situated to Ms. Sanchez.  The record reflects plaintiff was terminated after she was: reprimanded and placed on decision making leave for twice violating the policy requiring employees to directly notify supervisors of absences;[107] reprimanded for misplacing a patient's medical record;[108] placed on decision making leave for "whiting out" and changing a

---

[103]  Docket no. 12 at 5.

[104]  Id. at 3-4.

[105]  Id. at 3.

[106]  Id. at 6 (citing exhibit C at CHCS 0860, 0855, 0798, and 0799).  The Court notes plaintiff cites CHCS 1009, as evidence of Ms. Sanchez's work difficulties.  Although the document was produced by the Center, its significance is unclear.  The document is not written on a Center form and is not addressed to anyone's attention.  The document is undated and unsigned.  The document appears to be an employee's perception of Ms. Sanchez's performance -- "I think," "I do not think," "I do not mind," "It seems like," "I really believe," "I just think," and "I think that maybe."

[107]  Docket no. 11, exhibit B-7; exhibit B-10.

[108]  Id., exhibit B-9.

doctor's notation on a record;[109] and was unable to perform her work adequately in three different positions to which she was transferred between February 27 and April 12, 2004.[110]

Other than evidence showing Ms. Sanchez was often late for work and had other work-related difficulties in 2000 and in 2003 and was transferred to a new position in approximately February 2004,[111] there is no evidence showing Ms. Sanchez was absent without directly notifying Ms. Hodgson; lost a patient's medical record or "whited-out" and altered a doctor's notation on a medical record while under Ms. Hodgson's supervision; or failed to adequately perform after being transferred to a new position.

In sum, plaintiff has not established that she was similarly situated to Ms. Sanchez. Therefore, plaintiff has failed to establish all elements of her <u>prima facie</u> case of race discrimination.  Accordingly, the Center is entitled to summary judgment on plaintiff's Title VII, § 1981, and Texas Labor Code discrimination claims.

**C.**     <u>**Retaliation**</u>

    **1.**     <u>**Standards**</u>

Title VII prohibits employers from retaliating against employees for filing a discrimination charge or otherwise exercising their rights under Title VII.[112]  To establish a <u>prima facie</u> case of retaliation under Title VII, plaintiff must show that: (1) she engaged in activity protected by Title

---

[109] <u>Id.</u>, exhibit B-12; docket no. 12, exhibit B at CHCS 0086; <u>see also</u> docket no. 11, exhibit B-13.

[110] Docket no. 11, exhibits B-14 to B-17.

[111] <u>Id.</u>, exhibit B-18 (personnel records for Anita Sanchez); docket no. 12, exhibit C at CHCS 0860, 0855, 0800, 0798, and 0799.

[112] 42 U.S.C. § 2000e-3(a).

VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action.[113] "Title VII's anti-retaliation provision refers to ultimate employment decisions," such as "hiring, granting leave, discharging, promoting, and compensating."[114] Limitations which "deprive or 'would tend to deprive' the employee of 'opportunities' or 'adversely affect [her] status'" are not adverse employment actions for the purpose of Title VII retaliation.[115] At the <u>prima facie</u> stage, "[a] plaintiff need not prove that [her] protected activity was the sole factor motivating the employer's challenged decision in order to establish the causal link."[116] The inference of a causal connection in retaliation cases can be raised if the summary judgment evidence shows that the employer's action was based, in part, on knowledge of the employee's protected activity.[117] In addition, the Court can evaluate the temporal proximity of the protected activity to the adverse action to determine whether there exists a genuine issue of material fact to prevent summary judgment.[118]

Once the plaintiff establishes a <u>prima facie</u> case of retaliation, the same burden-shifting analysis used in discrimination cases becomes applicable; the burden of production shifts to the

---

[113]   <u>See</u> <u>Scrivner v. Socorro Indep. Sch. Dist.</u>, 169 F.3d 969, 972 (5th Cir. 1999); <u>Burger v. Central Apt. Management Inc.</u>, 168 F.3d 875, 878 (5th Cir. 1999); <u>Mattern</u>, 104 F.3d at 705.

[114]   <u>Mattern</u>, 104 F.3d at 707-08.

[115]   <u>Id.</u> at 709.

[116]   <u>Evans v. City of Houston</u>, 246 F.3d 344, 353 (5th Cir. 2001) (citing <u>Long v. Eastfield College</u>, 88 F.3d 300, 305 n. 4 (5th Cir. 1996)).

[117]   <u>Medina v. Ramsey Steel Co., Inc.</u>, 238 F.3d 674, 684 (5th Cir. 2001) ("[T]he causal link element is satisfied when the plaintiff shows that the employment decision and [her] protected activity were not wholly unrelated.") (internal quotations omitted).

[118]   <u>Gee v. Principi</u>, 289 F.3d 342, 346 n. 3 (5th Cir. 2002).

defendant to articulate a legitimate, non-retaliatory reason for its employment actions and the

plaintiff then has an opportunity to prove defendant's proffered reasons are pretextual.[119]

Ultimately, the employee must show that "but for" the protected activity, the adverse employment

action would not have occurred.[120]  The "but for" standard at the pretext stage is more stringent

than the causation requirement at the <u>prima facie</u> stage.[121]

**2.**   <u>**Analysis**</u>

The Center has moved for summary judgment on plaintiff's retaliation claim, arguing she

cannot establish the adverse employment action and causation elements of her <u>prima facie</u> case.

Alternatively, the Center argues plaintiff cannot establish pretext because she is unable to show

that "but for" her EEOC complaint she would not have suffered an adverse employment action.

Plaintiff did not expressly respond to the Center's arguments, raising the question of whether she

has abandoned the retaliation claim.

Assuming plaintiff did not abandon the claim, and considering all summary judgment

arguments and evidence presented by plaintiff as applying to the retaliation claim, the Court

considers the elements of plaintiff's <u>prima facie</u> case.  The Center concedes filing an EEOC

complaint is a protected activity.  As discussed, reprimands, suspensions, and transfers to various

---

[119] <u>See</u> <u>Seaman v. CSPH, Inc.</u>, 179 F.3d 297, 301 (5th Cir. 1999); <u>Long</u>, 88 F.3d at 304-05 & n. 4.

[120] <u>Seaman</u>, 179 F.3d at 301.

[121] <u>Montemayor v. City of San Antonio</u>, 276 F.3d 687, 692 (5th Cir. 2001); <u>see also</u> <u>Long</u>, 88 F.3d at 305 n. 4 ("At first glance, the ultimate issue in an unlawful retaliation case -- whether the defendant discriminated against the plaintiff <u>because</u> the plaintiff engaged in conduct protected by Title VII -- seems identical to the third element of the plaintiff's <u>prima facie</u> case -- whether a <u>causal</u> link exists between the adverse employment action and the protected activity.  However, the standards of proof applicable to these questions differ significantly.") (emphasis in original).

positions are not adverse employment actions.  Plaintiff was not demoted and did not suffer a reduction in pay or a loss of benefits as a result of these actions.  On the other hand, plaintiff's termination is an adverse employment action and suffices to establish the second element of plaintiff's prima facie case.  With respect to whether there is a causal connection between the EEOC complaint and plaintiff's termination, plaintiff has cited no evidence suggesting the Center was aware of her complaint at the time she was terminated.  Plaintiff's evidence shows the EEOC notified the Center of the complaint on or about April 26, 2004, well after plaintiff was terminated.[122]  Accordingly, it appears plaintiff has failed to establish a prima facie case of retaliation.

Nevertheless, assuming plaintiff can establish a prima facie case based on the temporal proximity of the EEOC complaint and her termination, an argument plaintiff has not raised, the burden has shifted to the Center to state a legitimate, nondiscriminatory reason for plaintiff's termination.  In that regard, the Center states plaintiff was terminated "because she could not perform all her tasks like other employees in the same position.[123]  The Center argues in particular that plaintiff "was provided training comparable to that of her peers who were performing medical records functions satisfactorily," but plaintiff "continued to have job performance problems."[124] The Center argues, in sum, that plaintiff was afforded additional unsuccessful opportunities when she was transferred to different units under different supervision[125] "in efforts of finding something

---

[122]  Docket no. 12, exhibit D at Apr. 26, 2004 "Notice of Charge of Discrimination."

[123]  Docket no. 11 at 17.

[124]  Id. at 16.

[125]  Id. at 16-17.

suitable for her experience and pay rate."[126]   Because the evidence supports its arguments,[127] the Center has provided a legitimate, nondiscriminatory reason for plaintiff's termination.

Given the Center's legitimate, nondiscriminatory reason for its action, plaintiff must cite evidence suggesting that "but for" her EEOC complaint, she would not have been terminated from her employment.   As plaintiff did not respond to the Center's arguments for summary judgment on the retaliation claim, she has not met her burden to raise a genuine issue of material fact about whether she was terminated solely because of her EEOC complaint.   Accordingly, the Center is entitled to summary judgment on plaintiff's retaliation claim.

## VII.  CONCLUSION

Based on the foregoing, it is **ORDERED** that the Center's motion for summary judgment[128] is **GRANTED** and plaintiff's claims of discrimination and retaliation are **DISMISSED.**   The Clerk shall enter judgment for defendant and against plaintiff, each side to bear its own costs.

**ORDERED, SIGNED** and **ENTERED** this 14th day of June, 2006.

_Pamela A. Mathy_

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[126]  Id. at 16.

[127]  Docket no 11, exhibit A at 78, 89, 106; exhibits B-8 to B-12 and B-14 to B-17.

[128]  Docket no. 11.